**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 1:25-cr-231-RCL** |
| **CHRISTOPHER MURPHY** | |
| *Defendant*. | |

## MEMORANDUM OPINION

On August 12, 2025, a federal grand jury returned an indictment against Defendant Christopher Murphy with two counts of distribution of child pornography and one count of receiving child pornography, in violation of 18 U.S.C. § 2252(a)(2) and (b)(1). *See* Indictment, ECF No. 5. On September 14, 2025, the government filed a memorandum in support of Defendant's pretrial detention, arguing that Defendant poses an "unmitigable risk to community safety." *See* Mem. in Support of Pretrial Detention, ECF No. 11, at 2. On September 15, 2025, Defendant filed a memorandum in opposition to the government's motion for detention, arguing that "[t]he presumption that there is clear and convincing evidence that there are no combinations of conditions that will reasonably assure the safety of the community is rebutted in this case." *See* Def.'s Mem. in Opp'n, ECF No. 12. A detention hearing was held but not concluded before Magistrate Judge Sharbaugh on September 15, 2025. The detention hearing was continued and then resumed before this Court on November 12, 2025, at which point the matter was taken under advisement. For the reasons described below, Defendant's pretrial release is **DENIED**.

### I. FACTUAL & PROCEDURAL BACKGROUND

Defendant currently faces two counts of distribution of child pornography and one count of receiving child pornography in violation of 18 U.S.C. § 2252(a)(2) and (b)(1). Indictment, ECF

1

No. 5.  The indictment alleges that between March 2025 and June 2025, Defendant "did knowingly distribute one or more visual depictions" of "a minor engaging in sexually explicit conduct" on two separate occasions.  *Id.*  Sometime between June 7 and June 14, 2025, the indictment also alleges that Defendant "did knowingly receive one or more visual depictions" of "a minor engaging in sexually explicit conduct."  *Id.*  Those charges include at least one video that shows the anal penetration of infants.  Rough Transcript of Hearing (Nov. 12, 2025) at 7:8–10.

Defendant was arrested on August 8, 2025 in Arizona, ECF No. 7, and made an initial appearance before Magistrate Judge Sharbaugh, who ordered that Defendant be temporarily detained.  *See* Minute Entry (Sep. 9, 2025).  A detention hearing was held but not concluded before Judge Sharbaugh on September 15, after Defendant's proposed third-party custodian dropped out at the last minute.  A new proposed third-party custodian was later identified by Defendant and the detention hearing resumed before Judge Lamberth on November 12.  *See* Order Granting Mot. to Reopen Detention H'rg, ECF No. 16; Minute Entry (Nov. 12, 2025).  On November 13, the government moved for leave to file a supplement to its Memorandum in Support of Pretrial Detention.  ECF Nos. 18, 20. The Court granted leave, *see* Minute Order (Nov. 13, 2025) and Defendant subsequently filed a response to the government's supplement.  ECF No. 19.

The charges against Defendant "stem from . . . the use of two encrypted messaging applications—Signal and Telegram—to distribute and to receive child sexual abuse material ("CSAM") on multiple occasions."  Mem. in Support of Pretrial Detention, ECF No. 11, at 2. Beyond the receipt and distribution that led to the instant charges, Defendant is also alleged to have been "a member of several Signal groups believed by law enforcement to be used for the sharing of CSAM, hosted Zoom video meetings . . . to connect with other 'pedos,' and repeatedly discussed his 'collection' of porn."  *Id.*  Between January and June 2025, Defendant conversed

with a subject previously arrested in the District of Columbia ("SUBJECT 1"), while an undercover officer monitored SUBJECT 1's device. *Id.* at 2–3. Throughout multiple discussions, Defendant discussed "his collection of porn, 'pedos,' and joining Zoom 'rooms'" with SUBJECT 1. *Id.* at 2.

Defendant concedes that the charges against him are "serious," but argues that they are distinguishable from the cases the government cites in favor of detention because the charges against him "do not involve any effort to contact a minor in person." *See* Def.'s Mem. in Opp'n, at 2. Based on his lack of attempted contact, Defendant argues that the government does not have clear and convincing evidence that he poses a danger to the community if he were to be released pending trial. *Id.* at 2–3.

At the November 12 detention hearing, the government proffered additional evidence of approximately 2,500 materials that constitute CSAM and approximately 2,700 materials that contain individuals that are questionable in age that were recovered from Defendant's phone. Rough Transcript of Hearing (Nov. 12, 2025) at 7:20–8:5. The government also proffered evidence of "a number of hard drives, two laptops and [approximately] four iPads" recovered from Defendant's home. *Id.* at 8:6–10. The government described Defendant as a "prolific distributer" of CSAM, who would "ask other users what their preferences or limits were and then send CSAM based on that response." *Id.* at 8:14–17. The government alleged that Defendant advised other online users how to "save and transfer CSAM content" and admitted in messages that his interest in CSAM went back as far as "five or six years." *Id.* at 9:7–15.

In response to the government's proffer, Defendant again relies on the fact that the charges against him do not involve allegations that he ever tried to meet up with a child or expressed interest in doing so. Def.'s Resp. at 2. Defendant instead argues that he would not pose a danger

to the community because his alleged conduct occurred online, and he would not have access to the Internet on pretrial release. *See id.* at 2–3.

## II.    LEGAL STANDARDS

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The "provisions for pretrial detention in the Bail Reform Act of 1984 fall within that carefully limited exception." *Id.* The Act states that a court shall order the detention of a defendant pending trial only if the court "finds that no condition or combination of conditions will reasonably assure the appearance of the [defendant] . . . and the safety . . . of the community." 18 U.S.C. § 3142(a), (e). This finding must be supported by "clear and convincing evidence." *Id.* § 3142(f)(2)(B). "Even if the defendant does not pose a flight risk, danger to the community alone is sufficient reason to order pretrial detention." *United States v. Blanchard*, 2018 WL 4964505, at *2 (citing *Salerno*, 481 U.S. at 755). Only Defendant's dangerousness is at issue in this case.

When there is probable cause to believe that the defendant committed an offense involving a minor victim under 18 U.S.C. § 2252(a)(2), as here, there is a rebuttable presumption that "no condition or combination of conditions will reasonably assure . . . the safety of the community." 18 U.S.C. § 3142(e)(3). Once the rebuttable presumption is triggered, "the defendant bears the burden of production 'to offer some credible evidence contrary to the statutory presumption.'" *Blanchard*, 2018 WL 4964505, at *4 (quoting *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985)). "The defendant may carry this burden by coming forward with some evidence that he will not . . . endanger the community if released." *United States v. Garner*, No. CR 24-533, 2025 WL 1575848, at *3 (D.D.C. Mar. 11, 2025) (citation omitted). If the defendant rebuts the presumption, "the presumption is not erased but rather remains in the case as an evidentiary finding militating against release to be weighed along with other evidence." *Id.* (citation omitted).

4

In determining whether there are conditions of release that will assure the appearance of the defendant and the safety of the community, the court looks to four factors under § 3142(g). They are: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. *See* 18 U.S.C. § 3142(g).

## III.    DISCUSSION

Defendant does not contest that the rebuttable presumption in § 3142(e)(3)(E) is triggered by the charges against him. *See* Def.'s Mem. in Opp'n. at 1.  Rather, Defendant suggests that the presumption is rebutted by his personal and professional background and his proposed conditions of release.  *Id.* ("[T]he defendant's history and characteristics and the availability of stringent conditions of release are the factors that rebut the statutory presumption . . . ."). Those factors are considered as part of the § 3142(g) factors below.  Ultimately, however, "the Court need not decide whether Defendant adequately rebutted the § 3142(e)(3)(E) presumption" because "the Court concludes that even if Defendant has borne his burden of production . . . the Government has shown by clear and convincing evidence that there is no condition or combination of conditions that will reasonably assure the safety of the community if Defendant were to be released." *Garner*, 2025 WL 1575848, at *3.  On the current record, the § 3142(g) factors favor pretrial detention. That is true notwithstanding the fact Defendant's alleged offenses did not involve efforts to meet up with a child in the real world.

### 1.  Nature and Circumstances of the Charged Offense

The first factor asks the Court to consider "the nature and circumstances of the offense charged, including whether the offense . . . involves a minor victim." 18 U.S.C. § 3142(g)(1).  This factor weighs in favor of detention as the charged offense is extremely serious, involving the

5

receipt and distribution of CSAM material depicting the sexual exploitation of children, including the anal penetration of infants. "Child pornography depicts pictorial evidence of physical sex abuse against and exploitation of children and the production and distribution of such contraband carries a multitude of harms." *Blanchard*, 2018 WL 4964505, at *4. That is true even of mere possession of CSAM material, and here Defendant is charged with three counts of the greater harms of receipt and distribution.

The nature of the charged offense is serious itself, and the circumstances surrounding the offense add to that seriousness. Those circumstances include Defendant's membership in online communities that encourage the sharing of CSAM, his leadership role in hosting Zoom "rooms" to connect with other "pedos," and his interest in building a "collection" of CSAM materials. Mem. in Support of Pretrial Detention, ECF No. 11, at 2. As the government argued at the detention hearing, the circumstances surrounding the charged offense do not paint a picture of isolated or merely recent conduct, *see* Rough Transcript of Hearing (Nov. 12, 2025) at 9:13–17, and therefore favor detention.

### 2. Weight of Evidence Against the Defendant

The second factor asks the Court to consider "the weight of the evidence" against the defendant. 18 U.S.C. § 3142(g)(2). Here, the government's evidence against Defendant is very strong. The government supports the CSAM receipt and distribution charges with Defendant's own Signal and Telegram messages, including several messages that confirm Defendant's details, including that he resides in Phoenix, a photo of himself, and the fact that he would turn "36 next week." Mem. in Support of Pretrial Detention, ECF No. 11, at 11. "If the government possesses overwhelming evidence that the defendant is guilty of the crime charged—and the nature of the charged offense involves a danger to the community—then the second factor will help meet the

6

government's burden of persuasion." *United States v. Taylor*, 289 F. Supp. 3d 55, 66 (D.D.C. 2018). Because the weight of the evidence against Defendant is strong, the second factor favors detention.

### 3. Defendant's Personal History and Characteristics

The third factor asks the Court to consider "the history and characteristics" of the defendant, including the defendant's "character," "community ties," and "criminal history." 18 U.S.C. § 3142(g)(3). Defendant argues that his profession as a medical doctor and his lack of a criminal history weigh in favor of release. *See* Def.'s Mem. in Opp'n, ECF No. 12, at 2 ("[Defendant] achieved his childhood dream of becoming a doctor…."). Defendant also submitted a letter written in support of his pretrial release by an individual who does not see him as a threat to that individual's own children. *See* ECF No. 12-1.

However, Defendant's medical background and lack of criminal history do not bear on the risk that Defendant poses to the community in this context. They have never before prevented Defendant's "five or six year" interest in consuming CSAM materials. The government suggests that in Defendant's own messages, he made "comments about being 'smarter' with respect to his collection, which he indicated he has rebuilt four times." Mem. in Support of Pretrial Detention, ECF No. 11, at 11. These suggest a longtime interest in CSAM materials. Defendant has provided no reason to believe that his medical training and lack of criminal history could reasonably be expected to mitigate his desire to consume CSAM if he were released.

Defendant proposes a set of "stringent" conditions to secure his release—24-hour-a-day home detention, enforced by electronic monitoring, with a condition that there be no devices in the house that have internet access. *Id.* at 2. That's in addition to regular surprise visits from a third-party custodian. *Id.* At the detention hearing, the government argued that occasional drop-

7

ins from a third-party custodian with unknown "internet savvy or [] ability to actual[ly] ensure the defendant doesn't have access to the internet" is insufficient. Rough Transcript of Hearing (Nov. 12, 2025) at 12:5–14. The Court agrees. Though Defendant has established a successful medical career and does not have a previous criminal history, these characteristics do not bear on the danger that Defendant currently poses to the community by continuing to receive or distribute CSAM materials. They therefore do not rebut a presumption of dangerousness and do not favor release.

**4. Nature and Seriousness of the Danger Defendant's Release Poses**

The final factor asks the Court to consider "the nature and seriousness of the danger to any person or the community that would be posed by the [defendant]'s release." 18 U.S.C. § 3142(g)(4). This factor weighs in favor of detention because "the nature of the crime charged— distribution of child pornography—weighs heavily against release." *Blanchard*, 2018 WL 4964505, at *6. This danger is reflected in the fact that distribution of CSAM materials falls into the category of cases for which there is a statutory presumption of detention. *See Galarza*, 2019 WL 2028710, at *7 ("These significant harms and dangers animated the Congress to create the statutory presumption of detention in these cases.")

As previously stated, neither Defendant's background training as a medical doctor, nor his proposed custodial plan for release, sufficiently addresses the Court's concern that Defendant poses a significant risk to the community by a continued desire to consume and distribute CSAM materials. That concern arises from the fact that "the distribution and possession of child pornography constitutes a danger to the community, resulting in physical and mental harm to the children depicted, normalizing such conduct among those sharing this contraband, and creating a market for such contraband, and thereby encouraging the victimization of more children." *Galarza*, 2019 WL 2028710, at *7. The danger posed by the consumption and distribution of

8

CSAM does not turn on a defendant's desire to abuse children in the real world. Mere online activity is inherently dangerous because it creates a market that encourages the continued sexual exploitation of children. For this reason, Defendant's argument that the danger he poses to the community is less serious than in "contact" cases is therefore unavailing.

Because Defendant has allegedly consumed thousands of CSAM materials over a period of years and distributed the same to dozens of individuals, the Court finds that the danger he poses to the community is substantial. For this reason, the Court finds that no condition or combination of conditions would reasonably keep the community safe were Defendant to be released.

## IV. CONCLUSION

For the foregoing reasons, the Court finds clear and convincing evidence that Defendant's pre-trial release would pose an unreasonable danger to the community, and that no condition or combination of conditions can be imposed that would reasonably ensure the safety of the community were Defendant to be released. As such, Defendant's Oral Motion for Pretrial Release is **DENIED**. The Defendant shall remain in the custody of the Attorney General pending a final disposition in this case.

A separate **ORDER** consistent with this Memorandum Opinion shall issue.

Date: ___12 -1-25___

Royce C. Lamberth
United States District Judge

9